BROOM v. WOOD, Secretary of State of Mississippi, et al.

No. 407.

District Court, S. D. Mississippi, Jackson Division.

Sept. 1, 1932.

J. H. Price, of Magnolia, Miss., H. V. Wall, of Brookhaven, Miss., P. C. Canizaro, of Vicksburg, Miss., J. O. S. Sanders, and Chalmers Potter, both of Jackson, Miss., and R. L. Jones, of Brookhaven, Miss., for complainant.

Greek L. Rice, Atty. Gen., and J. A. Lauderdale, Asst. Atty. Gen., for defendants.

Before a specially constituted court, under section 266 of the Judicial Code, as amended, USCA, title 28, § 380, composed of FOSTER, Circuit Judge, and HOLMES and DAWKINS, District Judges.

FOSTER, Circuit Judge.

This is a bill brought by Stewart C. Broom, a citizen of the United States, domiciled in Mississippi, against various state officers, praying for interlocutory and final injunctions to prohibit them from acting under the provisions of House Bill No. 197 of the 1932 Acts of the Legislature of Mississippi, known as the Congressional Redis- tricting Act on the ground that it violates the provisions of article 1, § 4, of the Constitution of the United States, and section 3 of the Act of Congress of August 8, 1911 (title 2, USCA § 3). The defendants, appearing through the Attorney General of Mississippi, admitted all the allegations of fact in the bill, but objected to the jurisdiction of the court on the grounds that sufficient jurisdictional amount was not involved and that the cause was not cognizable in equity as no rights of property were invaded. The plea to the jurisdiction was overruled and an interlocutory injunction issued on bond. On final hearing the injunction was made permanent.

### Statement of Facts.

The undisputed material facts are these: Based on the census enumeration of 1910, Mississippi was allotted eight representatives in Congress. Under the provisions of section 22, Act of June 18, 1929, 46 Stat. 26 (2 USCA § 2a), the allotment was reduced to seven.

The act of the Mississippi Legislature complained of, House Bill No. 197, Regular Session 1932, divides the state of Mississippi into seven congressional districts. The number of inhabitants in each district is approximately as follows: The First district, 241,000; Second district, 219,000; Third district, 400,000; Fourth district, 184,000; Fifth district, 244,000; Sixth district, 284,-000; Seventh district, 414,000.

According to the 1930 census, Mississippi has 2,009,821 inhabitants. It would be practicable to divide the state into seven districts having compact and contiguous territory with each district having approximately the same number of inhabitants.

### Conclusions of Law.

The right to vote for a representative in Congress is a right guaranteed by the Constitution of the United States. U. S. v. Mosley, 238 U. S. 383, 35 S. Ct. 904, 59 L. Ed. 1355. Said right to vote implies the right to vote in a legal election. Section 3 of the Act of August 8, 1911, requires each state to be divided into the number of districts equal to the number of representatives to which the state may be entitled; said districts to be composed of contiguous and compact territory, and to have as nearly as practicable the same number of inhabitants. The act is mandatory and must be followed by the states in fixing congressional districts. The Mississippi act is clearly violative of the

said act of Congress and illegal and void. Any election for representatives based upon the redistricting of the state under the provisions of said act will therefore be illegal and deprive the voters of the state of a right guaranteed by the Constitution. The plaintiff has no remedy at law at all. An injunction is the proper remedy in the premises.

■ Under the provisions of section 24, subd. 14, Judicial Code (28 USCA § 41 (14), the District Court has jurisdiction in equity, regardless of the amount involved or the violation of any right of property, to prevent invasion of any right of a citizen guaranteed by the Constitution.

HOLMES, District Judge (dissenting).

The final decree in this case is broad in terms and far-reaching in effect. It expressly declares void an entire act of the Legislature and perpetually enjoins the Governor, as well as all subordinate officers, from executing its provisions. It indirectly strikes at nominations by political parties, although it was stated in open court that no interference with party primaries was asked by the plaintiff; but I shall not dwell upon this seemingly apparent error in the decree, as the objections to it are more deeply rooted. However, see sections 5870 and 5900, Miss. Code of 1930; Newberry v. United States, 256 U. S. 232, 41 S. Ct. 469, 65 L. Ed. 913.

It was conceded at the hearing, and the court judicially knows, that the elections sought to be regulated are regular ones provided by law to choose officers, both state and federal, in addition to representatives in Congress, and that the expense of adding the names of congressional candidates to the ballot is too trifling for this or any court to consider. It was further conceded at the bar that the right of the plaintiff to be a candidate for office was not a sufficient legal basis for the issuance of an injunction.

Reliance for jurisdiction in this court is had solely upon section 24, par. 14, of the Judicial Code (28 USCA § 41 (14). Regardless of the amount in controversy, this paragraph gives the court jurisdiction of "all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, * * * of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

It is not conceivable that Congress intended by this paragraph to change the well-settled rule that a court of equity is concerned only with matters of property and the maintenance of civil rights. The grant of jurisdiction of "suits at law or in equity authorized by law to be brought" signifies an intention to preserve, and not to obliterate, the historical distinctions between law and equity imbedded in the Federal Constitution, and recognized in federal jurisprudence from the national government's birth to the present time. This court has no jurisdiction in matters of a political nature, except when necessary to the protection of rights of property. "Neither the legislative nor executive department," said Chief Justice Chase, "can be restrained in its action by the judicial department, though the acts of both, when performed, are, in proper cases, subject to its cognizance." Mississippi v. Johnson, 4 Wall. 475, 18 L. Ed. 437. "The office and jurisdiction of a court of equity," said Mr. Justice Gray, "unless enlarged by express statute, are limited to the protection of rights of property." In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 487, 31 L. Ed. 402. Mr. Chief Justice Fuller, on circuit, quoting the preceding excerpts and, citing other cases, added: "To assume jurisdiction to control the exercise of political powers, or to protect the purely political rights of individuals, would be to invade the domain of the other departments of government or of the courts of common law." Green v. Mills (C. C. A.) 69 F. 852, 858, 30 L. R. A. 90. See, also, Giles v. Harris, 189 U. S. 475, 23 S. Ct. 639, 47 L. Ed. 909; Brumfield v. Brock (Miss.) 142 So. 745; Pomeroy's Equity Jurisprudence, vol. 4 (14th Ed.) § 1753.

Questions of equitable jurisdiction and procedure aside, the claim in this case is lacking in matter of substantial federal right. The crux of plaintiff's contention is that the right to vote implies the right to vote in a legal election where his ballot will count for as much, relatively, as the ballot of any other elector, and that Mississippi's recent redistricting act, by inequality in number of inhabitants, lessens the weight of his vote in comparison with the vote of electors in other congressional districts with fewer inhabitants. No denial of the right to vote or hold office is asserted. No property or civil right is denied or threatened. The federal implied right, which is asserted, is that the vote

of every person in the Seventh district shall be of equal weight or power with the vote of every elector in other districts.

With deference, it is thought that the conclusion of the court is predicated upon a false major premise. The equal protection clause of the Fourteenth Amendment is inapplicable. No statutory or constitutional provision gives any elector the right to vote in a district numerically equal in inhabitants to every other congressional district. Mathematical equality is not required. Numerically exact limits are not fixed, either in the Constitution or by act of Congress. The widest discretion has been exercised by the Legislatures, under the present and previous apportionments, without congressional interference. Under the one of 1930, there are many states with unequal districts, as to the number of inhabitants. The state of Alabama has one with 250,000 inhabitants, and another with 450,000; California one with 165,000, and another with 350,000; Michigan one with 225,000, and another with 400,-000; Ohio one with 168,281, another with 633,678; Pennsylvania one with 125,322, another with 445,109; South Dakota one with 200,000, another with 650,000; Tennessee one with 195,000, another with 380,000. If, as plaintiff claims, he has a federal right to a balancing vote throughout the United States, it is apparent that this court can grant him no effective relief. For this reason the Constitution gave plenary powers to regulate the subject to the Legislature of each state and to the Congress.

There is also a wide gulf between the facts alleged and the right asserted. The bill relies upon the number of inhabitants in each district; nothing is said about the number of qualified electors. This is natural because the basis of representation in the Congress is apportioned by the Constitution in accordance with the number of inhabitants in each state. It is well known that in many of the states, including this one, residence is not the sole qualification of an elector. The proportion of electors to inhabitants is a factual relation, depending upon varying conditions, of which a court cannot take judicial knowledge. Notwithstanding the excessive number of inhabitants, the plaintiff's vote, under his theory, may outweigh the vote of electors in other districts with fewer inhabitants. It is a non sequitur to conclude that the number of qualified electors in each district is in equal proportion to the number of inhabitants. If then the asserted right existed in the abstract, no facts

are shown which would give play to the exercise of it.

The objections to the decree are still more serious. To issue an injunction to restrain the holding of an election, or directing the mode in which it should be held, has ever been regarded by constitutional writers as an interference with a free expression of opinion, and an unwarranted obstruction to the freedom of elections, which, if successful, would be fraught with danger to our republican institutions. The mere effort to assume such a power is suggestive of a tendency to render the people and the officers subservient to the courts, in matters of civil polity, and endangers our dual form of state and national government, each with its separate and independent departments.

The relief asked should be denied, not that the redistricting act is deemed wise or that all of the regulations prescribed by Congress have been fairly met, but because, under the distribution of powers in the Federal Constitution, the judicial department is not the guardian of the rights of the people in respect to the times, places, and manner of holding elections for representatives in the Congress. The Constitution (article 1, § 4) says these things "shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." If a primary object of the act is evinced by the mandate that "the Representatives to Congress shall be elected by districts composed of a contiguous and compact territory" (2 USCA § 3), each with only one representative, such object should not be wholly defeated because the Legislature may have abused its discretion with reference to a standard which is plainly directory, as shown by the use of the words, "as nearly as practicable." The discretion was not given to the judiciary. A court can only efface the districts, but Congress may alter the boundaries, or regulate more in detail the number of inhabitants, if not retroactively, at least prospectively.

The rule is well settled that, except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute. Judge Cooley says: "The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fails, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only

138

arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinion upon points of right, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the power apportioned to the other departments, being prima facie valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them."

If it be contended that, as a citizen or an elector of the state, the plaintiff has a federal right to insist upon a compliance by the Legislature with the congressional reapportionment act, it becomes readily apparent that in either capacity he has sustained no injury which has not been suffered by the people or the electorate at large. If any wrong has been done by the Legislature it is a public, political wrong, from which no special injury has resulted, or is impendent, to the plaintiff, and for which equity will grant no injunctive relief.

In conclusion, I am constrained to dissent, because I regard the issuance of the injunction in this case as an encroachment by the court upon the legislative power of a state, the necessary effect of which is to substitute the judgment of the court for that of the Legislature, in a matter where the Federal Constitution has granted an exclusive discretion, primarily to the Legislature of each state and ultimately to the Congress of the United States. Operating in this instance directly upon the primary function of the Legislature, if successful, the injunction portends the possibility of a like encroachment upon the ultimate or a similar function granted to the Congress by the Constitution of the United States.