Luigi De Pasquale, et als.
vs.
Timothy E. Molloy,
et als.
Members of the Board of
Canvassers and Regis-
tration

Eq. No. 11789.

Frank A. Prete, et als.
vs.
Timothy E. Molloy,
et als.
Members of the Board of
Canvassers and Regis-
tration

Eq. No. 11790.

Eugene C. McManus,
et als.
vs.
Timothy E. Molloy,
et als.
Members of the Board of
Canvassers and Regis-
tration

Eq. No. 11792.

October 27, 1932.

CHURCHILL, J. Heard on prayer for preliminary injunctions.

The three cases were heard together. The bills are indentical as to the nature of the relief sought, in their general scope, and are all framed on the same theory.

They are brought against the members of the Board of Canvassers and Registration of the City of Providence and pray for injunctions to prevent the Board from placing on the ballots to be used in the forthcoming election, in the third, fourth and thirteenth wards of the city, the names of certain persons as candidates for Aldermen and Councilmen in such wards, "under the heading or caption of the Democratic Party or under its emblem."

It appeared under the allegations of the bills which were not contested, and by documentary proof, that the Democratic caucuses held in the third, fourth and thirteenth wards on October 8th, 1932, were declared null and void by the Board.

On October 19th, 1932, the Executive Committee of the Democratic State Committee, purporting to act under the provisions of Chapter 1515, Public Laws 1930, certified to the Board that a contingency had arisen by reason of the action of the Board in declaring the Democratic caucuses void in relation to the nominations of Aldermen and Councilmen in the third, fourth and thirteenth wards and therefore the Executive Committee named and filed with the Board as nominees of the Democratic Party a complete ticket in each of the said wards for the offices of Aldermen and Councilmen. These same nominees had been placed in nomination before in the caucuses in the several wards which had been afterwards declared void.

The complainants in the several bills were also in nomination in the same wards at the same caucuses for the offices of Aldermen and Councilmen.

The Board, after the filing of the names of nominees by Executive Committee, decided and determined as a matter of record that the names so filed "be printed on the ballot under the designation or emblem of the Democratic party as nominees of said party for said offices to be voted for at the General Election * * * ".

No fraud or conspiracy is alleged in the bills nor can the bills be construed as tax-payers' bills. No equity, beyond the allegation that the complainants have no remedy at law, is advanced.

The bills simply challenge the power of the Board to place certain names on the ballot under the Democratic emblem and as the Democratic nominees, when such names have been filed with the Board by Executive Committee of the Democratic Party under the circumstances set forth.

It is manifest that the rights relied on and sought to be protected are rights political in their nature and not rights in or to property or civil rights.

*People ex rel.* vs. *Tool*, 35 Col. 225, and cases in Federal courts hereinafter cited.

The respondents at the outset raised the question of the jurisdiction of the Court sitting as a court of equity to entertain the bill.

Sec. 6, Chap. 323, Gen. Laws 1923, confers jurisdiction in equity:

"The superior court shall have exclusive original jurisdiction, except as otherwise provided by law, of suits and proceedings in equity and of statutory proceedings following the course of equity. * * * "

It is agreed that there are no statutory proceedings which embrace the controversies at bar. If the Court, sitting as a court of equity, has jurisdiction, such jurisdiction must arise from the grant of general equity power found in this section.

The case of *Dupre* vs. *St. Jacques*, 51 R. I. 196, cited by the complainants, is not an authority on the extent of the equitable jurisdiction of the Superior Court.

The distinction between the jurisdiction of the Supreme Court in the exercise of its revisory powers and the jurisdiction of the Superior Court in equity is obvious.

The complainants further argue that the Superior Court having jurisdiction in mandamus, it follows that it has the correlative right to issue an injunction in equity. To say that such a power results by implication is to disregard the plain canons of construction.

The similarity between the grant of jurisdiction in Sec. 6, Chapter 323, Gen. Laws 1923, and the grant of equity jurisdiction in the Constitution of the United States is such that the Federal decisions are of great weight on the point.

Two leading cases have established the boundary to the powers of a court of equity in this respect.

*Green* vs. *Mills*, 69 Fed. 852 (1895) and *Ex parte Sawyer*, 31 Sup. Ct. Rep.

402 (1887), held that a court of equity has no jurisdiction over political controversies but is limited to the adjudication of rights of property and civil rights.

In citing *Green* vs. *Mills*, 69 Fed. 852, Judge Holmes, delivering the opinion in *Giles* vs. *Harris*, 189 U. S. 475, took occasion to say: "The traditional limits of proceedings in equity have not embraced a remedy for political wrongs."

The weight of well considered authorities supports the doctrine of

*Green* vs. *Mills*, 69 Fed. 852, and *Ex parte Sawyer*, 31 Sup. Ct. Rep. 402.

See, among others:

*Anthony* vs. *Burrow*, 129 Fed. 783; *Fletcher* vs. *Tuttle*, 151 Ill. 41; *People* vs. *Canal Board*, 55 N. Y. 393;

*City of Annapolis* vs. *Gadd*, 57 Atl. 941 (Md.);

*Kearns* vs. *Howley*, 41 Atl. 273 (Pa.).

Pomeroy (4 Pomeroy's Equity, 4067 Sec. 175) states the rule thus:

"An injunction will not issue, as a general rule, for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held. An election is a political matter with which courts of equity have nothing to do."

To the same effect:

1 Lawrence, Equity, Sec. 45, P. 74.

The cases cited by the complainants in other jurisdictions do not support their position.

The case of *Cook* vs. *Houser*, 122 Wis. 534, is illustrative of a number of decisions in Western jurisdictions where injunctive relief has been granted. That case was an original petition in the Supreme Court of the State in an election controversy respecting the right to have certain names appear on the ballot under a

party designation. The Court granted injunctive relief on the ground that the constitution of the State gave original jurisdiction to the Supreme Court in all matters affecting the sovereignty of the State, its franchises or prerogatives,' or the liberties of the people.

In the same class belong:

*State* vs. *Morin*, 24 Mont. 441;

*People ex rel.* vs. *Tool*, 35 Col. 225.

Another class of cases where injunctions have been issued are in suits by tax-payers to prevent an illegal election where the result would be an illegal expenditure of money.

*Solomon* vs. *Fleming*, 34 Neb. 40;

*Cascaden* vs. *City of Waterloo*, 104 Iowa 673.

The decisions in this class of cases are against the weight of authority, it may be said.

The Court is constrained on the authorities to rule that sitting in equity it has no power to review and restrain the action of the Board of Canvassers and Registration on the case made by the bills and proofs.

The prayer for a temporary injunction in each of the above entitled cases is hereby denied.

For complainants: Knauer & Fowler, Frederick Torelli, Dooley, Jackvony, Curran & Dunn.

For respondents: John C. Mahoney, McCabe.