The CHIEF JUSTICE
 

 delivered the opinion of the court.
 

 A motion was made, some days since, in behalf of the State of Mississippi, for leave to file a bill in the name of the State, praying this court perpetually to enjoin and restrain Andrew Johnson, President of the United States, and E. O. C. Ord, general commanding in the District of Mississippi and Arkansas, from executing, or in any manner carrying out, certain acts of Congress therein named.
 

 The acts referred to are those of March 2d and March 23d, 1867, commonly known as the Deconstruction Acts.
 

 The Attorney-General obj ected to the leave asked for, upon
 
 *498
 
 the ground that -no bill -which makes a President a defendant, and seeks an injunction against him to restrain the performance of his duties as President, should be allowed to he filed in this court.
 

 This point has been fully argued, and we will now dispose of it.
 

 We shall limit our inquiry to the question presented by the objection, without expressing any opinion on the broader issues discussed in argument, whether, in any case, the President of the United States may be required, by the process of this court, to perform a purely ministerial act under a positive law, or may be held amenable, in any case, otherwise -than by impeachment for crime.
 

 The single point which requires consideration is this: Can the President be restrained by injunction from carrying into effect an act of Congress alleged to be unconstitutional ?‘-
 

 It is assumed by the counsel for the State of Mississippi, that the President, in the execution of the Reconstruction Acts, is required to perform a mere ministerial duty. In this assumption there is, we think, a confounding of the terms ministerial and executive, which are by no means equivalent in import.
 

 A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.
 

 The case of
 
 Marbury
 
 v.
 
 Madison, Secretary of State,
 

 *
 

 furnishes an illustration. A citizen had been nominated, confirmed, and appointed a justice of the peace for the District of Columbia, and his commission had been made out, signedj and sealed. Nothing remained to be done except delivery, and the duty of delivery was imposed by law on the Secretary of State. It was held that the performance of this duty might be enforced by
 
 mandamus
 
 issuing from a court having jurisdiction.
 

 
 *499
 
 So, in the case of
 
 Kendall, Postmaster-General,
 
 v.
 
 Stockton & Stokes,
 

 *
 

 an act of Congress Rad directed the Postmaster-General to credit Stockton & Stokes with suck sums as the Solicitor of the Treasury should find due to them; and that officer refused to credit them with certain sums, so found due. It was held that the crediting of this money was a mere ministerial duty, the performance of which might he judicially enforced.
 

 In each of these cases nothing was left to discretion. There was no room for the exercise of judgment. The law required the performance of a single specific act; and that performance, it was held, might he required by
 
 mandamus.
 

 Very different is the duty of the President in the exercise of the power to see that the laws are faithfully executed, and among these laws the acts named in the bill. By the first of these acts he is required to assign generals to command in the several military districts, and to detail sufficient military force to enable ..such officers to discharge their duties under the law. By the supplementary act, other duties are imposed on the several commanding generals, and these duties must necessarily be performed under the supervision of the President as commander-in-chief. The duty thus imposed on the President is in no just sense ministerial. It is purely executive and political.
 

 An attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized, in the language of Ohief Justice Marshal, as “an absurd and excessive extravagance.”
 

 It is true that in the instance before us the interposition of the court is not sought to enforce action by the Executive under constitutional legislation, but to restrain such action under legislation alleged to be unconstitutional. But we are unable to perceive that this circumstance takes the case out of the general principles which forbid judicial interference with the exercise of Executive discretion.
 

 
 *500
 
 It was admitted in the argument that the application now made to us is without a precedent; and this is of much weight against it.
 

 Had it been supposed at the bar that this court would, in any case, interpose, by injunction, to prevent the execution of an unconstitutional act of Congress, it can hardly be doubted that applications with that object would have been heretofore addressed to it.
 

 Occasions have not been wanting.
 

 The constitutionality of the act for the annexation of Texas was vehemently denied. It made important and permanent changes in the relative imjiortance of States and sections, and was by many supposed to be pregnant with disastrous results to large interests in particular States. But no one seems to have thought of an application for an injunction against the execution of the act by the President.
 

 And yet it is difficult to perceive upon what principle the application now before us can be allowed and similar applications in that and other cases have been denied.
 

 The fact that no such application was ever before made in any case indicates the general judgment of the profession that no such application should be entertained.
 

 It will hardly be contended that Congress can interpose, in any case, to restrain the enactment of an unconstitutional law; and yet how can the right to judicial interposition to prevent such an enactment, when the purpose is evident and the execution of that purpose certain, be distinguished, in principle, from the right to such interposition against the execution of such a law by the President ?
 

 The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance.
 

 The impropriety of such interference will be clearly seen upon consideration of its possible consequences.
 

 Suppose the bill filed and the injunction prayed for allowed. If the President refuse obedience, it is needless to
 
 *501
 
 observe that the court is without power to enforce its process. If, on the other hand, the President complies with the order of the court and refuses to execute the acts of Congress, is it not clear that a collision may occur between the executive and legislative departments of the government ? May not the House of Bepresentatives impeach the President for such refusal? And in that case could this court interfere, in behalf of the President, thus endangered by compliance with its mandate, and restrain by inj unction the Senate of the United States from sitting as a court of impeachment? "Would the strange spectacle be offered to. the public world of an attempt by this court to arrest proceedings in that court ?
 

 These questions answer themselves.
 

 It is true that a State may file an original bill in this court. And it may be true, in some eases, that such a bill may be filed against the United States. But we are fully satisfied that this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties; and that no such bill ought to be received by us.
 

 It has been suggested that the bill contains a prayer that, if the relief sought cannot be had against Andrew Johnson, as President, it may be granted against Andrew Johnson as a citizen of Tennessee. But it is plain that relief as against the execution of an act of Congress hy Andrew Johnson, is relief against its execution by the President. A bill praying an injunction against the execution of an act of Congress by the incumbent of the presidential office cannot be received, whether it describes him as President or as a citizen of a State.
 

 The motion for leave to file the bill is, therefore,
 

 Denied.
 

 *
 

 1 Cranch, 137.
 

 *
 

 12 Peters, 527.