Okey, J.
We agree with counsel for the plaintiff in error, that the question in this case is of general, and not merely local, importance. It involves the power of a governor to revolee a warrant of extradition of a fugitive from justice, issued on the requisition of a governor of another state. We are not aware that the question has been presented in the courts of the United States, or in the court of last resort of any state. That it is not free from difficulty is conceded.
The constitution of the United States provides, that “ a person charged, in any state, with treason, felony, or other crime, 'who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.” (Art. 4, § 2.) To secure uniformity in practice under this provision, Congress, in 1793, passed an act (1 Statutes at Large, 302), which has been slightly changed in phraseology, and is as follows : “ Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any state or territory, charging the person demanded with hav *72 ing committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from which the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which said person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent, when he shall appear. If no such agent appears within six months of the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory.” (U. S. Rev. Stat. § 5278.)
The history of the constitutional provision has been so well presented in Hurd on Hab. Cor. (2d ed.) 598-637; Com. of Ky. v. Dennison, 24 Howard (U. S.), 66; Brown’s case, 112 Mass. 409, and other authorities cited during the argument, that any re-statement of it is perhaps unnecessary. The provision was in the articles of confederation, in substantially the same form, and hence it has bean in force a century. It has received the careful consideration of the ablest lawyers in the country, and many questions arising under it may be regarded as settled. No member of this court doubts that when a case intended to be provided for is presented in regular form, the governor on whom the requisition is made has no discretion. It is clearly his duty to issue the warrant of extradition ; that duty, however, being one of imperfect obligation. The guilt or innocence of the accused can not be tried by him; and, where a crime is actually charged, formal defects as to the manner in which it is stated ought not to be regarded. Nor is it material whether the offense charged is punishable in the state upon which the demand is made; the question is, whether it is punishable as a crime in the demanding state. Com. of Ky. v. Dennison, supra ; Davis’ case, 122 Mass. 324.
But it is a mistake to say that, in determining whether *73 & case contemplated in the provision is presented, the governor upon whom the demand is made is vested with no ■discretion. Under the articles of confederation it was essential that the demand be made on the governor, although this was not expressly so stated; “and it is plain that the mode of the demand and the official authority by and to whom it was addressed, under the confederation, must have been in the minds of the members of the convention when this article was introduced, and that in adopting the same words they manifestly intended to sanction the mode of proceeding practiced under the confederation ; that is, of demanding the fugitive from the executive authority, and making it his duty to cause him to be delivered up.” Com. of Ky. v. Dennison. And this duty is not •devolved merely on the person who may at the time be governor. “ In such cases the governor acts in his official ■character, and represents the sovereignty of the state.” Taylor v. Taintor, 16 Wallace, 366-370. Moreover, it is -unreasonable to suppose that the framers of the constitution did not foresee, when they vested this necessary but -dangerous power in the chief magistrate of a state, that occasion would arise, in the discharge of such duty, for the •exercise of judgment and discretion. In Taylor v. Taintor it is .stated that he is vested with discretion to withhold the warrant, where the fugitive is charged with the commission of crime in the state to which he has fled. Is his discretion limited to that instance ?
Courts have discharged the fugitive on habeas corpus, notwithstanding he was in custody under the warrant of ■extradition, where the offense charged was not a crime, or not punishable by indictment in the demanding state, or was-not triable there as of right by a jury ; where the accused had never been, in person, within the demanding state; or where the papers upon which the application was made were forgeries, or plainly insufficient in matter of sub■stance. The People v. Brady, 56 N. Y. 182. If the courts may rightly discharge in such cases, it is manifest the governor may, for the same causes, withhold his warrant; and *74 if he may withhold his warrant, it seems reasonable that he-should have the power to revoke it on the same grounds. Why should he not have such power ? More than one hundred and fifty judges in this state have the unquestioned authority to discharge where the proceeding is plainly invalid by reason of defects in matter of substance; and I am unable to see why the governor, w7ho grants and issues-the process, should have less power over it. The tribunal, which has exclusive jurisdiction to grant and issue process, has, ordinarily, the power to quash or supersede it, when the fact that it is invalid, or was improperly obtained, is-made to appear; and there is no reason for holding that this process is an exception to the rule.
We are further to inquire whether the discretion and power of the governor are limited to cases in which defects-of the character above mentioned are found to exist. And it seems to me they are not. The provision was inserted in the articles of confederation, and subsequently in the-constitution, to subserve public, and not private purposes. The object was to secure the punishment of public offenders, and not to enforce the payment of private claims,, whether well or ill founded. To employ this extraordinary process for public purposes tends to secure peace and good order; but to prostitute it to the advancement of private-ends is to bring it into great disfavor. True, the theory is-that the demanding state will hold the offender for trial, even though he be brought into the state fraudulently, or forcibly, and without process; but experience shows that where the end sought is private, the accused is rarely brought to trial. No satisfactory reason is perceived why a governor should issue or obey a requisition where he is satisfied that the sole object of the party complaining is to enforce the payment of a private claim for money. Such an abuse of process is equivalent to a fraudulent use of it. Nor is the governor’s power in such case limited to a refusal to act. Judgments the most solemn may be-impeached for fraud. Service of process in any civil *75 matter, obtained by fraudulent contrivance or means, will be set aside on motion, whatever the process may be. Pardons obtained by fraud are held to be void. Eor reasons equally strong, a governor from whom such warrant is obtained for the advancement of private ends, fails to discharge his duty if he neglects to revoke the process on discovering the fraud. No doubt the framers of the constitution intended to invest him with that power ; and the reason for its exercise, in a case of that sort, is far greater than where the defect, however great, is in the requisition or other documents. Still, where money has been embezzled, or obtained by false pretenses, the offender is not likely to be brought to justice unless the injured party prosecutes;. and steps to obtain a restoration of the money are not 'incompatible with measures to secure the conviction of the-fugitive. The duty of the governor, in cases of that class, is, therefore, one of great delicacy ; and all that I have said as to his authority in refusing to issue or obey a requisition,, or in revoking a warrant, has relation to cases where thei-e is no real intention to prosecute criminally, if the money-demand is satisfied.
There is, as we have seen, no decision of the courts of the United States, or the court of last resort in any state, of the question under consideration. In the absence of such decision, we are warranted, by reason and authority, in looking to the practical construction which the constitutional provision has received in the executive department. We find that men who have occupied the highest positions in the state and federal governments have expressed, strong opinions on the subject. Attorn ey-Gen eral Henry Stanbery, in an opinion to Governor Bebb, referred to by counsel for defendants in error, insists that a govern or may,, under some circumstances, withhold the warrant. In an opinion of the chief executive of Maine (Governor Pair-child), in 6 Am. Jurist, 223, he said : There is “ no question, in my mind, as to the power to recall the warrant: which has been issued in this case.” In the matter of Adams, 7 Law Reporter, 386, it appears that Governor Thomas W. *76 Bartley revoked the warrant which he had issued for one ■charged with obtaining money by false pretenses. On July 6, 1857, Governor Salmon P. Chase revoked a warrant he had issued on the requisition of the governor of Illinois ; and this was done, it appears, after full argument by learned counsel. In one case, Governor John Brough ■stated on the record, as a reason for the revocation, that •“ soon after the issuing of the warrant, information was ■received that this requisition had been obtained for an ulterior object.” In another case, Governor J. B. Cox, in revoking a warrant, says it was done “ on affidavits showing that the complainant'in the case is unworthy of belief, and that the affidavits on which the requisition was issued were made under an assumed name.” Without multiplying instances, it appears from the abstract of the records in the executive department, and the case in 7 Law Reporter, ■386, that Governors Thomas W. Bartley, S. P. Chase, John Brough, J. D. Cox, R. B. Hayes, William Allen, and ’Thomas L. Young, each, in one form or another, revoked a warrant of extradition, and some of them exercised that .authority repeatedly; and it is well known that other governors of this and other states have often exercised, the same power.
If we should hold that the governor has no power of revocation where the objection only goes to the sufficiency o± the papers, in matter of form, or the motives of the party ■complaining, the same result would follow. We have seen in Taylor v. Taintor, supra, that the governor has the authority to withhold the warrant where the fugitive is in •custody, charged with the commission of crime in the state where he has taken refuge ; it can not be doubted that he should also withhold it where it is made to appear that the requisition is a forgery; nor can any serious question be made, if, in either of these cases, the warrant has inadvertently been issued, about his right to revoke the process. As the governor had power to revoke them for some causes, the court below properly held that no inquiry could be made on habeas corpus as to the particular ground upon *77 which these warrants were revoked. Indeed, while the-courts will discharge a fugitive on habeas corpus, where the-proceedings in his case are void, neither the general nor-state government will. otherwise interfere with the Governor in the discharge of his duty, or failure to discharge it, in cases of this sort. Com. of Ky. v. Dennison; Taylor v. Taintor; State of Mississippi v. Johnson, 4 Wall. 475 High on Ex. Rem. § 120. The State ex rel. v. Chase, 5 Ohio St. 528, in no way militates against these authorities, for the doctrine was fully recognized in that case, that where the governor is vested with a discretion, his action can not be controlled by mandamus. In any view, therefore, the-court below properly discharged the prisoners from custody.
An objection has been made, that while it might be very proper to revoke a warrant before the fugitive is delivered to the agent of the demanding state, yet that when such delivery is actually made, the power of the governor is at an end, and the general government, and the state in which the crime was committed, have acquired rights which can not be taken away. In one case, when Governor Allen exercised the power of revocation, the fugitive was in custody of the agent of the demanding state, though he was-still within our territorial limits, and he was discharged. How it was in this respect in the other cases I have referred to,-does not appear. As we have seen, “the governor acts in his official capacity, and represents the sovereignty'of the state,” and “ if he refuse, there is no means-of compulsion.” Taylor v. Taintor. Exclusive jurisdiction over the subject is vested in him. Taney, C. J., in Com. of Ky. v. Dennison, says, “Jffiere is no power delegated to the general government, either through the judicial department, or any other department, to use coercive-means.” He says, furthermore, that “ such a power would place every state under the control and dominion of the-general government, even in the administration of its internal concerns and reserved rights.” A fortiori, the demanding state can use no coercive power. “In the event of refusal, the state making the demand must submit.. *78 "There is no alternative.” Taylor v. Taintor. If the executive of the demanding state had the authority, through his agent, to remove the fugitive from the state of refuge, in opposition to the will of its executive, he would have the right to send an army to enforce the authority, and no •one is bold enough to claim that this may be done. The fact is, the warrant of extradition is, in substance, a consent to remove the alleged criminal beyond our territorial limits, and there can be no removal without a valid warrant. Botts v. Williams, 17 B. Mon. 687. An independent-.government does not hesitate to arrest the removal of a fugitive at any time before he is taken beyond the nation’s territorial limits, if it be discovered the case is not clearly •within the extradition treaty. In re Windsor, 6 B. & S. (118 E. C. L.), 522; 3 Whart. (C. L.), § 2973. The governor of a state has precisely the same power, if he discovers that the requisition is a forgery, or that the case is one not intended to be provided for in the constitutional provision ; and if he exercises the power cautiously, and only in the cases to which I have referred, or in othei’s of a like character, much may be done to prevent the abuse, without impairing the efficiency of extradition proceedings.
Further objection is made that Governor Young had no authority to revoke a warrant issued by Governor Hayes. But we have seen that “ the governor acts in his official capacity.” The warrant is not process of the person holding the office of governor, but a warrant issued by an officer. We all agree that Governor Young had the .same power to revoke a warrant issued by his predecessor, that he had to revoke one issued by himself.
Much has been said as to the constitutionality of the legislation set forth in the statement of this case. There is legislation on the general subject in nearly or quite all the states. Reference to much of it, and the decisions relating to it, will be found in 18 Albany L. J. 166. The view taken of this case renders it unnecessary for us to-express any definite opinion on the subject.
If it is true that the views here expressed are in conflict *79 -with, some general expressions in Com. v. Dennison, it is «equally certain that nothing in this opinion will be found in opposition to anything decided in that case. Expressions in-that case can not he reconciled with some things said in Taylor v. Taintor, and yet the decisions are in harmony. Questions of conflict between cases are determined not merely by differences of that sort, but by first ascertaining what may fairly be regarded as decided in each •case.

Judgment affirmed.