(*Superior Court of Cook County.*)

## People of the State of Illinois ex rel. William A. Bartlett, A. Lincoln Shute and Robert J. Bennett

### vs.

## Edward F. Dunne, as Mayor of the City of Chicago, and Michael Kenna.

(March 13, 1907.)

1. COURTS—DUTY OF WHERE JURISDICTION DOUBTFUL. It is true that the court will not take jurisdiction if it should not, but it is equally true that it must take jurisdiction if it should. The court has no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given.

2. STATUTES—REPEAL BY IMPLICATION. There must be a very clear implication and an inconsistency before the court can declare that a statute is repealed, where there is no express declaration to that effect.

3. SUNDAY CLOSING LAW—REPEAL BY CITIES AND VILLAGES ACT. The act which prohibits the opening of saloons and dramshops on Sunday was not repealed by the Cities and Villages Act which authorizes cities and villages organized under such act to regulate the liquor traffic.

4. REPEAL—SUSPENSION OF STATE LAW. There is no difference between a repeal by implication and the suspension of a state law in a particular locality by the adoption of a later law.

5. SUNDAY CLOSING LAW—IN FORCE IN CHICAGO. The state law prohibiting the sale of intoxicating liquors on the Sabbath day is applicable to and in force in the city of Chicago.

6. PRACTICAL CONSTRUCTION—AS TO REPEAL OF LAW. The fact that the city authorities of a city for a number of years had permitted saloons to keep open on Sundays is not sufficient to establish that a state law prohibiting the opening of saloons was not in force in such city.

7. MANDAMUS—TO COMPEL PERFORMANCE OF OFFICIAL DUTY IN EXERCISE OF POLICE POWER—ENFORCEMENT OF CRIMINAL LAWS. *Mandamus* will not lie to compel the mayor of a city to perform his official duty generally when the duty involved is the exercise of the police power. In the exercise of the police power city officials are not acting on behalf of the city in its private corporate capacity.

8. SAME—COMPELLING PERFORMANCE IN A PARTICULAR CASE. Nor will the writ of *mandamus* lie to compel the performance of the mayor's duty in a particular case.

9. SAME—GENERAL PUBLIC DUTY—NOT ENFORCEABLE BY MANDAMUS—INTEREST OF RELATORS. Where petitioners claim no special injury to their property rights nor to themselves, but come into court as members of the general public, having the same interest as the general public, and seek to compel the enforcement of a particular law, *mandamus* will be denied  There must be some property interests involved or a specific duty to perform a single particular act, and not a general duty to enforce the law or the exercise of the police power. . The remedy for dereliction by an executive official lies with the people themselves.

10. SAME—TO COMPEL MAYOR TO ENFORCE SUNDAY CLOSING LAW. *Mandamus* will not lie to compel a mayor of a city to enforce a state law prohibiting the opening of saloons on Sunday, either generally or as against a certain designated person.

Petition for mandamus. The petition is set out in *haec verba* in *People ex rel. v. Dunne, supra,* in the decision of Judge Chytraus on the motions of respondents to strike out

certain portions of the petition. The respondent Kenna filed a demurrer and the respondent Dunne filed an answer which alleged as follows:

That he admits that certain ordinances of the city of Chicago are in force as set forth in said petition; that he admits the granting of a license for the keeping of a saloon or dramshop to the co-defendant herein on the date and at the place and for the period, and that said co-defenant has been and still is keeping said saloon or dram-shop at said place, and that said license is still in full force and effect and unrevoked, all as set forth in said petition; that he admits, for the purpose of this answer only, that said co-defendant ever since the issuance of said license (but denies that it has been with the knowledge and consent of this defendant), has kept open said saloon and sold and dispensed intoxicating liquors therein upon Sundays, and intends to continue in the future to keep open his said saloon and to sell and dispense intoxicating liquors therein, upon every Sunday hereafter while said license is in force and effect, but this defendant denies that either this defendant, or said co-defendant, has constantly, openly and notoriously, or in any way whatsoever, violated or disregarded the law of the state of Illinois, referred to in said petition as the Sunday closing law, and denies that said co-defendant has constantly, notoriously or in any way, in violation of said Sunday closing law, kept open said saloon and sold and dispensed intoxicating liquors therein on Sunday.

And this defendant avers that while this defendant has been mayor of said city he has enforced, and during his entire term of office intends to enforce every law that is in force in said city to the best of his ability and power, and to the extent that the forces at his command will enable him so to do.

And this defendant avers that said Sunday closing law is not now and never has been in force or effect in said city of Chicago since its incorporation in 1875 under chapter 24 of the Revised Statutes of Illinois of 1874, known as "An act to provide for the incorporation of Cities and Villages."

And this defendant avers that in and by the said charter
of said city, its city council has always expressly had and
now has full power to license, regulate and prohibit the sell-
ing and giving away of any intoxicating, malt, vinous, mixed
or fermented liquor; and that only in so far as *granting*
licenses is concerned, has it been or is it requisite or necessary
in said city to comply with the law of said state relative to
the *granting* of licenses.

And this defendant avers that in and by its said charter,
no law in conflict therewith applies to said city; that the
provisions of said Sunday closing law are in conflict with
said charter, which was granted many years after the enact-
ment of said Sunday closing law.

And this defendant avers that the legislature of said state
has not licensed, regulated or prohibited, or attempted to
license, regulate or prohibit the selling or giving away of in-
toxicating, malt, vinous, mixed or fermented liquor in cities
and villages organized under said chapter 24 of the Revised
Statutes of the state of Illinois of 1874, except in so far as
any such legislation may relate to the *granting* of licenses in
said cities and villages.

And this defendant avers that at all times since the organi-
zation of said city in 1837 (except from June 23, 1852, to
February 12, 1853), the legislature of said state has dele-
gated to said city the right to regulate the liquor traffic in
said city on all of the days of the week, including Sunday;
and said city has ever since its organization in 1837, ex-
cept as aforesaid, exercised such power to regulate said liquor
traffic on all the days of the week, including Sunday; that in
the charter granted to said city in 1837, it was provided that
its common council shall have the right and power to regulate
the selling or giving away of any ardent or intoxicating spirits
without any restriction or limitation as to Sunday; that in
the next succeeding charter granted to said city in 1851, it
was provided that its common council shall have like power
without any restriction or limitation as to Sunday, to license,
regulate and restrain the selling or giving away of wines
and other liquors, whether ardent, vinous or fermented; that

in its next succeeding charter, granted in 1863, the common council of said city was given like power, unrestricted as aforesaid as to all days of the week, including Sunday, to license, regulate and restrain the selling or giving away of wines and other liquors, whether ardent, vinous or fermented, and that this same power remained and continued from 1863 unlimited in said city up to and including its incorporation, as aforesaid, in 1875, since which date continuously said city has had and has exercised such power similarly unrestricted as to all of the days of the week, including Sunday.

And this defendant avers that beginning in 1837, and up to and including the present time (except from June 23, 1852, to February 12, 1853), the city or common council of said city has, pursuant to and under its charter, continuously asserted and exercised, and is now asserting and exercising the authority and power to regulate the selling or giving away of intoxicating liquors in said city on all of the days of the week, including Sunday.

And this defendant avers that said city from a time long anterior to its incorporation in 1875, and continuously since, has under ordinances duly enacted by its city council always authorized and permitted the sale of spirituous, vinous and fermented liquors within said city on all Sundays, *provided only,* that the one engaging in such sale of spirituous, vinous and fermented liquors on Sunday was and is required by said ordinances to keep closed on Sunday all doors opening out upon any street from such bar or room where such liquors are sold, and all windows opening upon any street from the bar or room where such liquors are sold on Sunday must be provided with blinds, shutters or curtains so as to obstruct the view from such streets into such room.

And this defendant avers that from a time long anterior to 1875, and continuously since, under ordinances duly enacted by its city council, the mayor of said city has always granted, and this defendant still does grant licenses for the sale of spirituous, vinous and fermented liquors; that such licenses duly permit such sale on all of the days of the week, including Sunday, at the place designated in such license, provided

always that the person receiving such license shall and will keep closed all doors opening out upon any street from the bar or room where such liquors are sold on Sunday, and that on Sunday all windows opening upon any street from such bar or room where such liquors are sold are provided with blinds, shutters or curtains so as to obstruct the view from such streets into such room.

And this defendant avers that the co-defendant has complied with all of the laws and ordinances governing saloons or dram shops in said city on Sunday, and that the license referred to in said petition and which was granted to said co-defendant was granted to him pursuant to and in compliance with the laws and ordinances in force in said city at the time of the said grant, and that ever since the issuance of said license to him, said co-defendant has complied with all its terms, governing or regulating saloons or dramshops on Sunday.

And this defendant avers that at the time said license was granted to said co-defendant, there was in force and effect in said city, and there still is in force and effect therein, an ordinance duly enacted, which permits the sale of intoxicating liquors on Sundays, but provides that the keeper of the saloon or dramshop shall keep closed on Sunday all doors opening out upon any street from the bar room or room or rooms where such saloon or dramshop is kept, and that all windows opening out upon any street from such bar room, or room or rooms shall on Sunday, except between the hours of 1 o'clock a. m. and 5 o'clock a. m., be provided with blinds, shutters or curtains, placed and maintained in such a manner as to obstruct the view from such street into such bar room, or room or rooms; that said co-defendant has complied with the said ordinance and has not violated any of the provisions or conditions thereof, or of any law having reference to the keeping of a saloon or dramshop within said city on Sunday and the sale or giving away of intoxicating liquors therein or the conduct and management thereof on Sunday.

And this defendant avers that all of the acts charged in said petition were had and done with the knowledge and per--

mission, and under the full authority of the city council of said city and the ordinances by it enacted, and under and by virtue of the license granted by the duly constituted authorities of said city in pursuance of said ordinances.

And this defendant avers that for many years since the incorporation of said city in 1837, and particularly for more than thirty years continuously last past it has always been and now is the uniform and common understanding and belief of all of the mayors of said city and of its city council, and of its police authorities, and of all of its departments of government, that said Sunday closing law does not apply to and was not and is not in force in said city, and that said city has full and complete authority to regulate the sale and disposition of intoxicating liquors in said city on all of the days of the week, including Sunday; that during all of said time all of the mayors and regularly constituted authorities of said city, including the legislative, executive and law departments thereof, have, by contemporaneous interpretation construed said Sunday closing law as having no force or effect or application to or within said city, and that the regulation of the sale and disposition of and the permission to sell intoxicating liquors on Sunday was and is a matter wholly within the control of the city authorities of said city.

And this defendant avers that at the date of the filing of the petition herein, there were and there now are in full force in said city 7,239 saloon or dramshop licenses, which licenses were duly issued and granted by this defendant under and pursuant to said ordinances; that each and all of said 7,239 licensees, as this defendant has been informed and he therefore avers, have conducted during the period of their said respective licenses and at the time of the filing of said petition, were conducting and now conduct saloons and dramshops in said city on Sundays under and pursuant to their said respective licenses, and during said period prior to and at the time of the filing of said petition herein and continuously since, have been selling and disposing of intoxicating liquors on Sunday in their said respective saloons or dramshops, and intend to and will on all future Sundays during

the period of their said respective licenses, all of which run during the period of the license granted to said co-defendant, sell, or dispose of intoxicating liquors, in their said respective saloons or dramshops.

And this defendant avers that if said Sunday closing law is in force in said city, as alleged in said petition, it is and would be a physical impossibility for this defendant to have personal knowledge of or to personally investigate and ascertain the facts in each case, and judge of the sufficiency thereof; that this defendant is not empowered to revoke the license of any saloon or dramshop for an alleged violation of said Sunday closing law, unless the evidence of such violation, if there be any such violation, is clear and satisfactory to him.

And this defendant avers that there are now pending in the circuit and superior courts of said county, at least forty-five petitions for mandamus instituted on or since December 21, 1906, against this defendant, to compel him to close up and revoke the licenses of at least thirty-one saloons or dramshops and fourteen theaters because of alleged violation of said Sunday closing law, and that very many more similar proceedings are threatened to be instituted against him.

And this defendant avers that the revocation of a saloon or dramshop license in said city, and the determination of whether or not the saloon or dramshop keeper has violated the law, are matters which rest wholly within the official discretion of this defendant.

And this defendant claims and insists that this honorable court should not take or exercise jurisdiction to adjudicate the matters set forth in said petition, and should not grant a writ of mandamus as prayed for therein, and having fully answered the said petition, prays to be hence dismissed with his reasonable costs, etc.

To this answer the relators interposed a demurrer.

*Messrs. Church, McMurdy & Sherman* and *Walter J. Miller,* for relators.

*Levy Mayer, James Hamilton Lewis,* corporation counsel, and *Daniel P. Murphy,* assistant corporation counsel, for respondents.

CHYTRAUS, J. :—

Counsel for the petitioner has particularly pressed upon the court the importance, the great importance, of the cause now pending befôre the court. While, in my judgment, every cause that comes into court is of importance, yet I fully agree with counsel for the petitioner in the importance of this, and the great importance, of this particular cause.

There is considerable earnestness, if not feeling, on the part of the parties to the controversy. On the one hand the parties are engaged in the laudable effort of suppressing vice, and they can see that by and through the means of this court they can attain their object. On the other hand, the parties can see that here is an effort at interference through the means of the court with personal liberty. Questions of this kind invariably arouse feeling.

But the court has no right to participate in the feeling of the parties. The court has but to declare the law, and, when it is declared, enforce it.

I can do no better than to quote here the remarks of Chief Justice Marshall in that great case of *Cohens v. Virginia*, 6 Wheaton, 264, when he was determining a case in which great feeling existed on both sides. He says (p. 404) : "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them; all we can do is to exercise our best judgment and conscientiously to perform our duty."

In the case at bar there are two main questions presented, and they are these: First whether the state statute regarding the closing of saloons has any application within the city

of Chicago. The contention by the defense that the Sunday law has no application in Chicago they seek to fortify by the argument of contemporaneous or practical construction. I do not regard them as two separate cases; I regard them as two divisions of one proposition. The other one is, What is the power and the duty of the court when relief of this sort is sought against the executive ·department of the government? While these questions, as I have already stated, are questions of great importance, I have been aided by the able arguments of eminent counsel on both sides, and to me the answers are so clear that I do not think I need any further time to determine upon the principles of law applicable.

As to the first proposition. The term "suspension of the state law" is used. I do not see that the position of counsel is aided by the use of the term "suspension" rather than the term "repeal." The contention of counsel for the defense amounts to this, that the state law is repealed by the enactment of the charter, the cities and villages act, and the previous special acts applicable to the city of Chicago.

When the question of repeal by implication, as this would be, because there is no express provision for repeal, is urged, there must be a very clear implication, and there must be an inconsistency, in the first place. I agree with the argument of Brother Church on that proposition, and I can see no rule for holding that the city incorporation laws, either the special acts or the cities and villages act, repealed the Sunday closing law. It is my opinion that the Sunday closing law is in full force and effect within the limits of the city of Chicago, as it is elsewhere in the state.

Contemporaneous construction. The term construction here, meaning practical construction, has been urged by the city authorities in permitting, not licensing, the saloons to keep open without any restriction as to the days they might be kept open. I don't think that is a sufficient argument, and I cannot feel convinced by that argument that the law must be regarded as repealed.

We come next to what I regard as the most serious question in the case, and that question involves the construction by the

17

court of the constitutional principles and the application
thereto to the situation before us,—whether as a general prop-
osition the executive of this city shall be compelled by manda-
mus of this court to perform his official duty when the duty
involved is the exercise of the police power. In this connection
I want it borne in mind that in the exercise of the police power
city officials are not acting on behalf of this city in its private
corporate capacity, but purely as executive officers exercising
the police power in a geographical division,—a portion of the
state; and the term "executive" embraces the mayor and
the police department under his control. When I use the ex-
pression, "as a general proposition," I use it advisedly and
intentionally. Although the petition purports to point out
a particular instance or two, yet it is clear upon the record
before us that it is designed to compel the exercise of a gen-
eral duty within the general exercise of the police power.

This is made plainer when we inspect the petition before
us. The petitioners come as certain persons who claim no
special injury to their property or their property rights, nor,
indeed, to themselves, but who come to a court of law as one
or two of a general public and as having the same interest,
and only the same interest, as the general public. By the
petition it is sought to obtain from the court a writ to pre-
vent the mayor, an executive official of a co-ordinate branch
of the state government, from committing what, if the peti-
tion is true—and in that connection I refer to the intent—is
a crime under the laws of the state, namely, the palpable neg-
lect in the performance of his official duties.

There are two classes of cases cited on behalf of the peti-
tioners—at least I divide them into two classes—considered
as a sufficient reply to the proposition that an executive offi-
cer may be mandamused by the courts. It will be found
that those cases which have been cited divide themselves into
cases where property interests have been involved, where there
has been a property right involved, or the other class, where
the performance of a specific duty to do a single particular
act has been involved—that is, not a general duty to enforce
the law or the exercise of the police power.

I may here advert to the case of the *State of Mississippi v. Johnson,* 4 Wall. 475. In that case it was sought to compel the president of the United States, by means of a mandatory injunction, to execute the laws of the United States, being a suit on behalf of a state. The bill was filed as an original bill in the supreme court of the United States, but the relief asked for was denied. The opinion of the court, by Chief Justice Chase, refers to those instances of compelling the performance of a ministerial duty that are spoken of in the cases that have been cited. But the court says, referring to that class of cases (p. 499) : "The law required the performance of a single specific act; and that performance, it was held, might be required by mandamus."

It appears to me that that is a very clear distinction. At the commencement here it was argued that the proceeding partakes of the nature of an equitable proceeding. No bill in equity lies to prevent the commission of a crime; no bill in equity lies against the city authorities to enforce the performance of duty on behalf of one who has no property rights involved nor any interest involved aside from that which he possessed in common with the general public. These rules of law, applicable in suits in equity, I consider applicable here. Neither courts of law nor courts of equity possess the power to supervise or control executive officials in the administration of the duties of their respective offices where no property rights are involved except in the instance I have referred to and the instance spoken of in the case I last cited. Where there is involved merely the general proposition, Shall the official or shall he not within the scope of his particular office exercise the police power of the state delegated to him under the law of the state? courts must keep their hands off. The remedy for dereliction of duty by an executive official in this respect, if any there be, lies with the people themselves.

Under our form of government executives have, generally speaking, no right and no power to coerce the judiciary in the performance of the duties of that department; neither has the judiciary department the right nor the power to co-

erce the executives in the performance of their duties. Each department in exercising the governmental function assigned to it is co-ordinate and totally independent of the other. That the law has provided for the punishment of judicial malfeasance or misfeasance, but emphasizes this principle. Punishment for such guilt lies with the criminal courts. That such punishment may be inflicted does not extend the jurisdiction of the courts of equity or courts of law.

I suppose the proper order under the view expressed by the court here would be to sustain the demurrer to the petition and overrule the demurrer to the answer.

### NOTE.

The above case is now pending in the appellate court under the title of *People ex rel., etc. v. Fred A. Busse, Mayor, et al.*—Ed.