**YOUNGSTOWN SHEET & TUBE CO. et al. v. SAWYER.**

**REPUBLIC STEEL CORP. v. SAWYER.**
**BETHLEHEM STEEL CO. et al. v. SAWYER.**

Civ. A. 1550–52, 1539–52, 1549–52.

United States District Court
District of Columbia.

April 9, 1952.

John J. Wilson, and John C. Gall, of Washington, D. C., for Youngstown Sheet & Tube Co.

John C. Gall, Edmund L. Jones, and Howard Boyd, of Washington, D. C., and

Thomas F. Patton, of Cleveland, Ohio, for Republic Steel Corp.

Bruce Bromley, of New York City, and E. Fontaine Broun, of Washington, D. C., for Bethlehem Steel Co.

Holmes Baldridge, Asst. Atty. Gen., Washington, D. C., for the defendant.

HOLTZOFF, District Judge.

On April 8, 1952, the President of the United States issued an Executive Order No. 10340 entitled "Directing the Secretary of Commerce to Take Possession of and Operate the Plants and Facilities of Certain Steel Companies."

The principal provision of this Executive Order reads as follows:

"The Secretary of Commerce is hereby authorized and directed to take possession of all or such of the plants, facilities, and other property of the companies named in the list attached hereto, or any part thereof, as he may deem necessary in the interests of national defense; and to operate or to arrange for the operation thereof and to do all things necessary for, or incidental to, such operation."

Acting pursuant to this Executive Order, the Secretary of Commerce took possession of the plants, facilities, and other properties of certain companies engaged in the manufacture of steel. Among them are the three companies who are plaintiffs in the three actions now before the Court.

The order of seizure was accompanied by a lengthy telegram addressed to the president of each company, whereby the president was being called upon, as a loyal and patriotic citizen, to serve as, and was appointed operating manager for the United States, of the properties of the company. The president of the company, as such operating manager, was authorized and directed to continue operations for the United States. In other words, the management of the company was in each instance left in charge of the operation of the plant, subject to Government control.

Three of the companies whose plants were so seized—Bethlehem Steel Company,

Republic Steel Corporation, and Youngstown Sheet and Tube Company—have brought actions for an injunction and declaratory judgment against Charles Sawyer, individually, and as Secretary of Commerce. In each instance, an application for a temporary restraining order has been made to restrain the defendant from continuing in possession of the plant, and in any other way from acting under the order of seizure. These applications are now before the court for consideration.

■ An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action. The application is, of necessity, addressed to the discretion of the court. It is not sufficient to show that the action sought to be enjoined is illegal. It is, in addition, essential to make a showing that the drastic remedy of an injunction is needed in order to protect the plaintiff's rights. In reaching its decision, the court must arrive at a balance of equities, and consider not only the alleged legality or illegality of the action taken, but also other circumstances that may appeal to the discretion of the court.

■ There are several matters that the court must weigh in this instance. Although, nominally, and technically, an injunction, if granted, would run solely against the defendant Sawyer, actually and in essence it would be an injunction against the President of the United States, because it would have the effect of nullifying and stopping the carrying out of the President's Executive Order for the seizure of the plants. It is very doubtful, to say the least, whether a Federal Court has authority to issue an injunction against the President of the United States, in person, State of Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437. In that case, Chief Justice Chase made the following statement, 4 Wall. at page 500:

"The Congress is the legislative department of the Government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance."

This does not mean that the President is above the law, or that he has unlimited powers, but merely that the coercive remedy of an injunction may not be directed against him, just as it may not be directed against the Congress.[1]

1. In construing provisions of the Constitution conferring powers on the Congress or the President, it must be borne in mind that the Constitution speaks in general language and was meant to endure permanently. It must not be construed in the same manner as a contract or a statute. Chief Justice Marshall stated in McCulloch v. Maryland, 4 Wheat. 316, 407, 4 L.Ed. 579: "Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves." The broad and liberal construction of the Constitution espoused by Hamilton and Marshall is one of the foundation stones of the greatness of this country, and one of the mainstays of the Republic. Many of the powers of the Congress and the President are implied from the express powers. To mention but a few at random, the Congress has implied power to establish banking institutions. It has implied power to ex-

clude and deport aliens. The power of eminent domain is an implied power. There is an implied power to acquire territory by purchase, cession, or conquest (e. g., the Louisiana Purchase). The President has implied power to establish courts in occupied territory. He has the right to seize or destroy property in the theater of military operations (e. g., the Emancipation Proclamation). He has the power as Commander in Chief to requisition supplies for the armed forces, subject, of course, to the payment of just compensation. Whether the power to requisition supplies for the armed forces extends to the seizure of plants that manufacture raw materials, which may be necessary to keep the army operating in Korea continuously supplied with ammunition, firearms, airplanes, tanks, and motor vehicles, is a question of law or, possibly a mixed question of law and fact, of momentous import and broad ramifications. Such a question should not be decided summarily on an application for a temporary restraining order, but should

The court, it seems to me, should not do by indirection what it could not do directly, irrespective of whether the court has the power so to do. This is a consideration that should affect the exercise of the court's discretion.

Another circumstance that must be considered is whether the plaintiffs will sustain irreparable damage if a temporary restraining order were denied. The court heard counsel at length on this point, because that is a matter that seemed to the court to be of vital importance. The situation, as it presents itself at this stage, is that the president of each company, and his managerial staff, remain in control and are named as operating agents for the United States. They have not been dispossessed or displaced. They are still in possession and will continue to conduct the company's operations.

True, plaintiffs fear that other drastic steps may be taken which would displace the management or which would supersede its control over labor relations. It seems to the court that these possibilities are not sufficient to constitute a showing of irreparable damage. If these possibilities arise, applications for restraining orders, if they are proper and well-founded, may be renewed and considered.

On the other hand, to issue a restraining order against Mr. Sawyer, and in effect nullify an order of the President of the United States, promulgated by him to meet a nation-wide emergency problem is something that the court should not do, unless there is some very vital reason for the court stepping in.

██ The court feels that the balance of the equities is in favor of the defendant, so far as the present application is concerned. This conclusion is fortified by the concessions of Government counsel, to the effect that, in any event, the plaintiffs have an adequate remedy in suits for damages. Government counsel concede that if, as they say it is, the seizure is lawful and a

legal taking of property, a suit for just compensation will lie in the Court of Claims against the United States.

On the other hand, Government counsel further concede that if the seizure is illegal, an action for damages lies against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. The court is of the opinion that such actions would lie.

The fact that the plaintiffs have adequate remedies by way of actions for damages, and the considerations already stated, lead to the conclusion that the balance of equities requires a denial of temporary restraining orders. The motions for temporary restraining orders are denied.

be determined only after a full exploration of the law and facts. For the Court to do otherwise would be improvident. It was said by Chief Justice Stone in

United States v. Butler, 297 U.S. 1, 79, 56 S.Ct. 312, 80 L.Ed. 477, that the only check on the exercise of judicial power is the Court's own sense of self-restraint.