# Interpretation of Section 586 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act

Existing statutory provisions that prohibit or impose mandatory restrictions on the public release of information are not overridden by section 586 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2003, which requires the President to order federal agencies "to expeditiously declassify and release to the victims' families" information regarding the murders of certain Americans in El Salvador and Guatemala. Provisions that permit but do not require the government to withhold information are, however, overridden by section 586.

It is permissible to interpret the scope of the information covered by section 586 to be limited to classified information.

July 18, 2003

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

This memorandum responds to your Office's request for our opinion on two questions concerning the interpretation of section 586 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2003, Pub. L. No. 108-7, 117 Stat. 11, 215–16 (Feb. 20, 2003) ("Foreign Operations Appropriations Act"). Section 586 requires the President to order federal agencies "to expeditiously declassify and release to the victims' families" information regarding the murders of certain Americans in El Salvador and Guatemala. Your Office has asked (1) whether the directive to release information overrides existing statutory provisions prohibiting or limiting the public release of information, and (2) whether it is permissible to interpret the scope of the information covered by section 586 to be limited to currently classified information. For the reasons set forth below, we conclude that existing statutory provisions that prohibit or impose mandatory restrictions on the public release of information are not overridden by section 586, but that provisions that permit but do not require the government to withhold information are overridden. We also conclude that it is permissible to interpret the scope of the information covered by the statutory directive to be limited to classified information.

## I.

Section 586 was enacted as part of the Foreign Operations Appropriations Act on February 20, 2003. It provides as follows:

> (a) Information relevant to the December 2, 1980, murders of four American churchwomen in El Salvador, and the May 5, 2001, murder of Sister Barbara Ann Ford and the murders of other American

citizens in Guatemala since December 1999, should be investigated and made public.

(b) Not later than 45 days after enactment of this Act, the President shall order all Federal agencies and departments, including the Federal Bureau of Investigation, that possess relevant information, to expeditiously declassify and release to the victims' families such information, consistent with existing standards and procedures on classification, and shall provide a copy of such order to the Committees on Appropriations.

(c) In making determinations concerning declassification and release of relevant information, all Federal agencies and departments should use the discretion contained within such existing standards and procedures on classification in support of releasing, rather than withholding, such information.

(d) All reasonable efforts should be taken by the American Embassy in Guatemala to work with relevant agencies of the Guatemalan Government to protect the safety of American citizens in Guatemala, and to assist in the investigations of violations of human rights.

We believe that your first question is controlled by the text of subsection (b), which directs the President, within 45 days of enactment, to order federal agencies "that possess relevant information, to expeditiously declassify and release to the victims' families such information, consistent with existing standards and procedures on classification."[1] Significantly, this subsection does not directly impose disclosure requirements on any agency, nor does it purport to modify existing statutory mandates to which any agency is subject. Rather, the statutory language by its terms directs only the issuance of an order by the President. It neither purports to override any other statute, nor grants the President authority to do so. And the President does not otherwise possess the authority to disregard constitutionally valid statutes; such statutes may be overridden only pursuant to the legislative process set forth in Article I, Section 7 of the Constitution. We therefore conclude that the President's order, and the obligations it imposes on the agencies, are limited by existing statutory authorities and restrictions. Where other statutes prohibit or impose mandatory restrictions on the public disclosure of

---

[1] In his signing statement concerning section 586, Statement on Signing the Consolidated Appropriations Resolution, 2003, 39 Weekly Comp. Pres. Doc. 225, 227 (Feb. 24, 2003), President Bush delegated his responsibility to issue the order to the Attorney General, who implemented the statutory directive by issuing a memorandum to the heads of all federal departments and agencies, dated April 4, 2003. The substance of that memorandum does not bear directly on the questions that you have asked us to address.

information, the order issued pursuant to section 586 cannot require a different result.

Our conclusion is reinforced by the "cardinal principle of statutory construction that repeals by implication are not favored." *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 168 (1976). To find that section 586 overrides statutes prohibiting or restricting the disclosure of information, in the absence of any express language to that effect, would be to find an implied repeal of those statutes. However, "[i]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974). Under our reading, section 586 is certainly reconcilable with existing statutory disclosure restrictions: where existing statutes prohibit or impose mandatory restrictions on disclosure, full effect is given to those statutes; where disclosure is not so prohibited or restricted, the order issued pursuant to section 586 is controlling. *See id.* at 551 ("when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective").

Different analysis governs statutes that permit, but do not require, agencies to withhold information from the public. Such statutes do not restrict the Executive's authority to release information; rather, they allow discretion either to withhold or disclose information. Because the President has the authority to order agencies to release information that could be withheld pursuant to discretionary statutes of this sort, we conclude that section 586 requires him to do so, subject to his constitutional prerogative to withhold information, the disclosure of which would impair the performance of his constitutional duties, *see* Statement on Signing the Consolidated Appropriations Resolution, 2003, 39 Weekly Comp. Pres. Doc. 225, 227 (Feb. 24, 2003) (the Attorney General "shall ensure that [section 586] is implemented in a manner consistent with the President's constitutional authority to withhold information, the disclosure of which could impair foreign relations, national security, the deliberative processes of the Executive, or the performance of the Executive's constitutional duties"), and "consistent with existing standards and procedures on classification," Pub. L. No. 108-7, § 586(b), 117 Stat. at 215–16.[2]

---

[2] While section 586 permits agencies to withhold information "consistent with existing standards and procedures on classification," Pub. L. No. 108-7, § 586(b), 117 Stat. at 215–16, it also informs the application of these standards and procedures in certain respects. First, it suggests that agencies "should use the discretion contained within such existing standards and procedures on classification in support of releasing, rather than withholding [relevant] information." *Id.* § 586(c). Second, the requirement that the President order agencies "to expeditiously declassify and release" relevant information, *id.* § 586(b), appears to require that agencies expedite declassification determinations.

## II.

We believe that the text of section 586 is ambiguous with respect to your second question. On the one hand, section 586(a), which refers to "[i]nformation relevant to the December 2, 1980, murders of four American churchwomen in El Salvador, and the May 5, 2001, murder of Sister Barbara Ann Ford and the murders of other American citizens in Guatemala since December 1999," can be understood to define the scope of the information covered by subsection (b). On the other hand, the operative language of subsection (b) requires only that the President order the agencies "to expeditiously declassify and release" information "consistent with existing standards and procedures on classification." A natural implication of this directive's grammatical structure and emphasis on classification is that it refers only to documents that are currently classified. The remaining provisions of section 586 do not clearly resolve this ambiguity, with the result that the statute can be read in two different ways.

The reading that would entail a broader scope for the covered information would rely on subsection (a), as well as subsection (b)'s reference to federal agencies "that possess relevant information." If subsection (a) is understood to define "relevant information," and if this portion of subsection (b) in turn is viewed as controlling without reference to other text, then both classified and unclassified information would be covered by the President's order. As explained more fully below, however, this reading creates certain grammatical difficulties since subsection (b)'s subsequent references to declassification and existing standards and procedures on classification cannot be read literally to apply to unclassified information. Nevertheless, we believe this broader reading to be a reasonable interpretation of the statute.

We believe it equally reasonable, however, to interpret the directive of section 586 to be limited to classified information. This narrower reading is supported by the grammatical structure of the operative language of subsection (b). Not only must the President direct agencies to both "declassify *and* release" the contemplated information, he must also direct that they do both "consistent with existing standards and procedures on classification." Were subsection (b) intended to cover both classified and unclassified information, one would not expect the former phrase to be cast in the conjunctive, since unclassified information cannot be declassified, but only released. And if the conjunctive is not to be understood literally, one would expect the latter phrase to be placed so as to modify only "declassify," since existing standards and procedures on classification would not govern the release of currently unclassified information.

Technical grammatical considerations aside, this reading of section 586 also seems to follow from the statute's emphasis on classified information. In addition to subsection (b)'s focus on declassification and the standards and procedures on classification, the immediately following provision, subsection (c), is also centered on classified information: it directs that "[i]n making determinations concerning

*declassification* and release," agencies "should use the discretion contained within such existing standards and procedures on *classification* in support of releasing, rather than withholding, such information."

Under this narrower interpretation, section 586 is understood to be focused on a perceived need for an expedited effort to declassify and release classified information on the murders in El Salvador and Guatemala. On this view, subsection (b)'s reference to "Federal agencies and departments . . . that possess relevant information" may be understood not to delineate the scope of the President's order but rather to identify the agencies to which it should be directed. Section 586(a) may be similarly understood not as a substantive definition but as an indication of Congress's desire that information regarding these murders "should be investigated and made public." It is quite possible that Congress believed that the principal obstacle to achieving these ends is the government's lengthy and piecemeal declassification process. Congress may well have believed that most unclassified information has already been released on those murders, or that existing law, such as the Freedom of Information Act,[3] provides adequate means of obtaining unclassified information. Section 586 can thus be understood as a targeted response to the important, but discrete, problems posed by classified information. On this understanding, the statute advances *purposes* set forth in subsection (a), but it does so through the calibrated *means* of overriding waiting periods and other delays relating to the declassification process and suggesting that declassification discretion should be exercised in favor of releasing, rather than withholding, relevant information.

We believe the Executive may permissibly choose to interpret the directive of section 586 to be limited to classified information. Because subsection (b) directs the issuance of an order implementing section 586, we believe that the statute necessarily confers interpretive authority to resolve statutory ambiguities. *See* U.S. Const. art. II, § 3 (President "shall take Care that the Laws be faithfully executed"); *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866) (President's "exercise of the power to see that the laws are faithfully executed" is not subject to judicial control, at least where anything is "left to discretion" or there is "room for the exercise of judgment"); *cf. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984); *United States v. Mead Corp.*, 533 U.S. 218 (2001). We need not resolve the precise scope of the interpretive authority conferred, however. In light of the grammatical structure of the operative language in subsection (b), the focus of subsections (b) and (c) on classification, and the

---

[3] The Freedom of Information Act requires government agencies to make their records available to non-governmental requesters, *see* 5 U.S.C. § 552(a)(3)(A) (2000), subject to certain exemptions that authorize agencies to withhold requested records, *see id.* § 552(b). Of particular pertinence here is Exemption One, which authorizes the withholding of all properly classified information. *See id.* § 552(b)(1).

eminent plausibility of the narrower interpretation of the statute, we believe it to be permissible under any standard that might apply.

HOWARD C. NIELSON, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*